**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Amy Marie Foreman,<br><br>　　　　　　Plaintiff,<br><br>vs.<br><br>Commissioner of Social Security Administration,<br><br>　　　　　　Defendant. | No. CV-22-08116-PCT-SPL<br><br>**ORDER** |

Plaintiff Amy Marie Foreman seeks judicial review of the denial of her application for Social Security Disability Insurance under the Social Security Act, 42 U.S.C. § 405(g). Before the Court are Plaintiff's Opening Brief (Doc. 10), Defendant Commissioner of Social Security Administration's Answering Brief (Doc. 11), Plaintiff's Reply Brief (Doc. 12), and the Administrative Record (Doc. 9). Upon review, the Court reverses the Administrative Law Judge's decision (AR 17–26)[1] and remands for further proceedings.

### I.　　BACKGROUND

Plaintiff filed a Title II application for disability insurance benefits on July 19, 2019, for a period of disability beginning on January 1, 2014. (AR 20). Plaintiff testified at an administrative hearing on January 25, 2021 (AR 80–119) and a supplemental administrative hearing on May 7, 2021 (AR 39–77), after which the Administrative Law

---

[1] Administrative Record (*see* Doc. 16).

Judge ("ALJ") found Plaintiff was not disabled (AR 17–26). On May 3, 2022, the Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the agency's final decision. (AR 2–4).

The Court has reviewed the medical evidence in its entirety and will discuss the pertinent medical evidence in addressing the issues raised by the parties. Upon considering the medical records and opinions, the ALJ that "there were no medical signs or laboratory findings to substantiate the existence of a medically determinable impairment" and that Plaintiff therefore "was not under a disability, as defined in the Social Security Act, at any time from January 1, 2014, the alleged onset date, through December 31, 2018, the date last insured." (AR 25).

## II.   LEGAL STANDARD

A person is considered "disabled" for the purpose of receiving social security benefits if he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security Administration's decision to deny benefits should be upheld unless it is based on legal error or is not supported by substantial evidence. *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008).  "Substantial evidence is more than a mere scintilla but less than a preponderance." *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (citation omitted). "Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." *Trevizo v. Berryhill*, 871 F.3d 664, 674–75 (9th Cir. 2017). The Court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Id.* at 675. The Court reviews "only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which [she or] he did not rely." *Id.* The Court will not reverse for an error that is "inconsequential to the ultimate

nondisability determination" or where the ALJ's "path may reasonably be discerned, even if the [ALJ] explains [his] decision with less than ideal clarity." *Treichler v. Comm'r of Soc. Sec.*, 775 F.3d 1090, 1099 (9th Cir. 2014) (citing *Alaska Dept. of Envtl. Conservation v. E.P.A.*, 540 U.S. 461, 497 (2004)).

To determine whether a claimant is disabled for purposes of the Act, the ALJ follows a five-step process. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 20 C.F.R. § 404.1520(a)). The claimant bears the burden of proof on the first four steps, and the burden shifts to the Commissioner at step five. *Id*. At the first step, the ALJ determines whether the claimant is presently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. 20 C.F.R. § 404.1520(a)(4)(ii). At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id*. At step four, the ALJ assesses the claimant's residual functional capacity ("RFC") and determines whether the claimant is still capable of performing past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If not, the ALJ proceeds to the fifth and final step, where she determines whether the claimant can perform any other work in the national economy based on the claimant's RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). If not, the claimant is disabled. *Id*.

### III.   DISCUSSION

The only issue Plaintiff raises in this case is whether the ALJ's finding that Plaintiff has no medically determinable impairments during the relevant time period is supported by substantial evidence (Doc. 10 at 1). A medically determinable impairment is one that "result[s] from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1521. In other words, a medically determinable impairment "must be

established by objective medical evidence from an acceptable medical source"; a claimant's "statement of symptoms, a diagnosis, or a medical opinion" cannot be used to establish a medically determinable impairment." *Id.*; *see also id.* § 404.1529(b) ("Your symptoms, such as pain, fatigue, shortness of breath, weakness, or nervousness, will not be found to affect your ability to do basic work activities unless medical signs or laboratory findings show that a medically determinable impairment(s) is present.").

In this case, Plaintiff alleges the following impairments: "hyper sensitivity famer's lung; bowel disease; sponge kidney issues; white matter disorder; multi chemical electro; and mold microtomies." (Doc. 10 at 2). Her arguments, however, focus primarily on multiple chemical sensitivity ("MCS"). "The diagnosis of a multiple chemical sensitivity is a tricky one, because it is, by its very nature, idiosyncratic and difficult to assess objectively." *Teitelbaum v. Astrue*, No. No. CV 10-07167 RZ, 2011 WL 5293278, at *1 (C.D. Cal. Nov. 3, 2011). In *Teitelbaum*, like in this case, the plaintiff reported "acute sensitivity to her environment," including "pain from being around electricity and chemicals." *Id.* The ALJ in *Teitelbaum* "stated that Plaintiff's testimony alone could not establish a severe impairment, and that there was little objective evidence of her claimed impairment of multiple chemical sensitivity" such that it did not amount to a medically determinable impairment. *Id.* The district court reversed, finding that "[t]he ALJ erred by effectively requiring objective evidence for a disease that eludes such measurement." *Id.* at *2 (quoting *Benecke v. Barnhart*, 379 F.3d 587, 594 (9th Cir. 2004)). The court reasoned that although "there was not evidence [of MCS] that could be measured in the way that blood pressure can be measured, there was, in fact, not only the testimony of the claimant, but two other kinds of evidence as well: the treating physicians' assessments, and the testimony of third-party [lay] witnesses." *Id.*

Similarly, here, the ALJ stated that Plaintiff "has very little objective evidence of record that addresses a medically determinable impairment, which causes the claimant's allegedly disabling symptoms." (AR 24). But like in *Teitelbaum*, the record includes assessments by a treating physician, Dr. Kristi Mattson, as well as lay witness statements.

Dr. Mattson diagnosed Plaintiff with "Mold Mycotoxicosis, [MCS], numerous dangerous allergies to foods and medications and very symptomatic and disabling Electrical Hypersensitivity" on February 2, 2019. (AR 461). In November 2019, Plaintiff underwent allergen testing, the results of which the ALJ did not discuss. (AR 24). On February 8, 2021, Dr. Mattson provided a nine-page opinion letter stating that "[b]y January 1, 2014, [Plaintiff] had an active diagnosis of [MCS]," citing the CDC diagnostic criteria for MCS. (AR 685). The ALJ discredited Dr. Mattson's opinion because:

> Her opinions postdate the claimant's date last insured and, while her initial opinion was rendered only two months following the expiration of the claimant's date last insured, it is not clear where the medical history was derived from nor is there objective treatment to substantiate her opinion. The initial opinion was rendered after a single visit with the claimant, and prior to the performance of any medical or laboratory testing. The November 2019 testing was performed almost one year after the expiration of the date last insured. Dr. Mattson identifies no objective medical evidence to establish the claimant's medical condition back to her date last insured.

(AR 24–25).

Initially, "[a]lthough contemporaneous medical evidence is preferred, a claimant may offer retrospective diagnoses that relate back to the insured period to show disability." *Petty v. Astrue*, 550 F. Supp. 2d 1089, 1097 (D. Ariz. 2008) (finding an ALJ erred in rejecting claimant's depression as a medically determinable impairment because physician's examination occurred more than one year after claimant's date last insured). Thus, the ALJ erred to the extent he rejected certain evidence simply because it postdated Plaintiff's date last insured. This is particularly notable with respect to the November 2019 allergen testing because if the testing supports the MCS diagnosis and relates back to the insured period, then it is objective medical evidence of Plaintiff's impairment.[2]

---

[2] To be sure, it is entirely unclear from the record whether or not the allergen testing supports the MCS diagnosis. Medical expert Dr. James Haynes testified at Plaintiff's hearing that "he was not qualified to testify as to the [November 2019] laboratory findings." (AR 25), and Dr. Mattson's opinions do not appear to explicitly discuss the allergen testing in relation to Plaintiff's MCS.

Although a retrospective diagnosis does not necessarily relate back to the insured period, the ALJ's decision does not provide substantial evidence to discredit Dr. Mattson's opinion that Plaintiff's MCS dates back to January 1, 2014.

Regarding the lack of objective treatment, Dr. Mattson's February 2019 opinion states that "[t]he mainstay of treatment is 'avoidance,'" which Plaintiff was already doing by the time of Dr. Mattson's first examination. (AR 461). Dr. Mattson noted that Plaintiff "found a rural isolated area . . . where with stringent attention to NO . . . chemical exposure in her living area, she has been symptom free." (AR 461). The record does not appear to identify any other treatments that may have been effective. Thus, the fact that Dr. Mattson did not prescribe additional treatment is not especially notable. Nor is it significant that Dr. Mattson's initial opinion came after just one visit with Plaintiff and prior to any testing, given that her opinion remained consistent after additional visits and testing.

Finally, the ALJ discredited Dr. Mattson's opinions because she "based her diagnoses on [Plaintiff's] subjective complaints" and "it is not clear where the medical history was derived from." (AR 24–25). But this is not entirely true. Dr. Mattson's opinions refer to Plaintiff's 2010 and 2013 medical records, as well as her own observations of Plaintiff and her physical reactions to certain environmental stimuli. (*See* AR 461, 685–693). Thus, the reasons stated by the ALJ for discrediting Dr. Mattson's opinions are not supported by substantial evidence.

Instead, the ALJ credited the testimony of Dr. James Haynes, a neurologist who reviewed Plaintiff's records and concluded that Plaintiff does not have a medically determinable impairment. (AR 25). Dr. Haynes testified, however, that "he was not an expert on chemical sensitivities" and "was not qualified to testify as to the [November 2019 allergen testing] laboratory findings." (AR 25). Thus, the ALJ's statement that "Dr. Haynes . . . based his opinion on a cumulative review and synthesis of the medical evidence" is necessarily false, as Dr. Haynes apparently lacked the qualifications necessary to synthesize the laboratory findings—which may constitute the critical

6

objective medical evidence needed to support a medically determinable impairment. (AR 25).

Moreover, like in *Teitelbaum*, the record includes several lay witness statements. The ALJ "considered the lay witness statements" and found that "[a]lthough the claimant's complaints are consistent, there is simply a lack of objective medical findings and diagnoses prior to the expiration of the claimant's date last insured." (AR 26). The applicable regulations are clear that a medically determinable impairment must be established by objective medical evidence, but here, there is also an issue of whether Plaintiff's claimed impairments predated her date last insured. "[T]estimony from family, friends, and neighbors [is] . . . relevant to the determination of a continuously existing disability with onset prior to expiration of insured status." *Flaten v. Sec'y of Health & Hum. Servs.*, 44 F.3d 1453, 1461 n.5 (9th Cir. 1995). Thus, on remand, should the ALJ find a medically determinable impairment, the lay witness statements may be used to determine whether the disability existed prior to Plaintiff's date last insured.

### IV.   CONCLUSION

This is a peculiar case involving a condition, MCS, that is "mysterious[ ] and elusive[ ]." *Teitelbaum*, 2011 WL 5293278, at *1. As the Court has noted, several issues remain unclear from the record. Because the ALJ's finding that Plaintiff had no medically determinable impairments during the relevant time period is not supported by substantial evidence, the ALJ's decision must be reversed. Plaintiff requests that the matter be remanded for further proceedings, including a *de novo* hearing. "Where a *de novo* hearing would not provide helpful insight on remand, one is not required." *Michele D. v. Kijakazi*, No. 1:20-cv-03145-SMJ, 2021 WL 9759484, at *2. The Court leaves it to the ALJ's sound discretion whether a *de novo* hearing would be helpful or whether any deficiencies in the record can be addressed in other ways. *See id.* at *4. Accordingly,

**IT IS ORDERED** that the final decision of the Commissioner of Social Security is **vacated and remanded** to the Commissioner of the Social Security Administration for further proceedings consistent with this order.

**IT IS FURTHER ORDERED** that the Clerk of Court shall enter judgment accordingly and terminate this action.

Dated this 3rd day of May, 2023.

                                                Honorable Steven P. Logan
                                                United States District Judge